**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ______________

WENDELL "SEAN" WALTON,

Plaintiff,

v.

PROTECTO WRAP COMPANY,

Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Wendell "Sean" Walton ("Mr. Walton" or "Plaintiff"), by and through his attorneys, HKM Employment Attorneys LLP, for his Complaint and Jury Demand against Defendant Protecto Wrap Company ("Protecto Wrap" or "Defendant"), alleges as follows:

**PRELIMINARY STATEMENT**

This is an employment discrimination case arising from Defendant's discrimination and harassment against Mr. Walton, and the subsequent retaliation he experienced following his opposition to racist treatment, in violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401, *et seq.* ("CADA") and 42 U.S.C. § 1981 ("Section 1981"). Mr. Walton, an African-American/Black man, was subjected to race-based discrimination and harassment during his employment with Defendant. After he reported the racist treatment and incidents, Defendant terminated his employment.

## PARTIES

1. Mr. Walton is, and at all times relevant to this Complaint was, a resident and domiciliary of Colorado who resided in Englewood, Colorado 80110.

2. At all times relevant to this Complaint, Mr. Walton worked as an employee of Defendant as defined by C.R.S. § 24-34-401(2).

3. Defendant is a foreign corporation incorporated under the laws of Oklahoma with its principal office located at 1955 South Cherokee Street, Denver, Colorado 80223.

4. At all times relevant to this Complaint, Defendant served as Mr. Walton's employer as defined by C.R.S. § 24-34-401(3).

5. At all relevant times, Defendant employed more than 50 employees during Mr. Walton's employment.

## JURISDICTION AND VENUE

6. Mr. Walton incorporates by reference the above paragraphs as though set forth separately herein.

7. Mr. Walton brings this action for violations of Section 1981 and CADA.

8. This Court has original jurisdiction over Mr. Walton's claims under Section 1981 pursuant to 28 U.S.C. § 1331 because those claims arise under federal law.

9. The Court may exercise supplemental jurisdiction over Mr. Walton's state law claims pursuant to 28 U.S.C. § 1367(a), as such claims arise out of the same case or controversy as Mr. Walton's federal claims.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged in this Complaint occurred within this District.

## ADMINISTRATIVE REMEDIES EXHAUSTED

11. Mr. Walton incorporates by reference the above paragraphs as though set forth separately herein.

12. On or about May 8, 2025, Plaintiff filed Charges of Discrimination against Defendant with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") (CCRD Charge No. E2500029949 and EEOC Charge No. 32A-2025-00666), alleging discrimination and harassment based on Plaintiff's race and retaliation for opposing unlawful discrimination.

13. The CCRD issued a Notice of Right to Sue with respect to Plaintiff's Charge of Discrimination on or about December 19, 2025.

14. Mr. Walton has met all administrative prerequisites prior to filing this action.

15. Mr. Walton files this Complaint within ninety (90) days of receiving the Notice of Right to Sue issued by the CCRD.

## FACTUAL ALLEGATIONS

16. Mr. Walton incorporates by reference the above paragraphs as though set forth separately herein.

17. Mr. Walton began working for Defendant as a Machine Operator on or about March 10, 2025.

18. Mr. Walton worked at Defendant's facility located at 1955 South Cherokee Street, Denver, Colorado 80223.

19. At all times during his employment, Mr. Walton performed his job well and in accordance with Defendant's legitimate expectations.

20. Mr. Walton is African-American/Black and is a member of a protected class.

21. On or about March 18, 2025, while rap music was playing, Mr. Walton's coworker and line lead, Aaron Roberts (White), made comments to Mr. Walton, referring to the rap music as "your music" and inquiring as to why "you" (Black people) listen to music talking about killing each other, selling drugs, and robbing and destroying the community.

22. Mr. Walton asked Mr. Roberts to talk about something different and informed Mr. Roberts that what he was saying was racist.

23. Robert Kapfhamer (White), another coworker, also told Mr. Walton, "We don't have to hear your black music; we don't like black music anyways."

24. Mr. Walton immediately reported this interaction to his supervisor, Mike Susman (White), on March 18, 2025, and asked if he could be moved from the area.

25. Mr. Susman refused Mr. Walton's request to be relocated away from the coworkers making offensive and racist remarks.

26. On or about March 26, 2025, Mr. Susman took Mr. Walton and Mr. Roberts to meet with Susan Graham Bartholomew (White), Defendant's HR Director, to address workplace issues between Mr. Walton and Mr. Roberts.

27. At the start of the meeting, Mr. Susman stated directly to Mr. Walton, "Sean, this is a warning," despite the fact that Mr. Walton was not accused of doing anything wrong, and had simply expressed concerns regarding racist conduct.

28. During the meeting, Mr. Roberts admitted that he was aware he had made inappropriate comments.

29. Ms. Bartholomew responded to Mr. Walton's report of Mr. Roberts' unlawful harassment by stating that "[we] just need to get along and work together."

30. Ms. Bartholomew sent Mr. Walton back to work without issuing any written warning to Mr. Roberts.

31. After returning to his work area from the meeting, Mr. Walton learned that a swastika symbol and the racial slur "N**GERS" had been carved into the bathroom door frame. Mr. Walton went to the bathroom, observed the vandalism himself, and reported it to Ms. Bartholomew.

32. Mr. Susman took photographs of the vandalism and called an emergency meeting with the entire retail crew.

33. During this meeting, Nick Glenn (White), the Super Stick Production Manager,[1] stated, "my daddy is a Klan member," and "I grew up around Klan members."

34. Mr. Glenn also stated, "Why wouldn't I think that one of [y'all] did this?" in reference to Defendant's African-American/Black employees.

35. The vandalism was covered up with spray paint and other materials.

36. Later that same day, a maintenance worker employed by Defendant reported that another swastika had been carved on the bathroom paper towel dispenser.

37. Before the second carving could be removed, Mr. Susman discovered Mr. Walton and another employee taking photographs of the vandalism and discussing the incident.

38. Mr. Susman told Mr. Walton and the other employees that they needed to return to their workstations because they were not on a break and they were not using the bathroom.

[1] Mr. Walton, Mr. Roberts, and Mr. Susman reported to Mr. Glenn.

39. Mr. Walton expressed to Mr. Susman that he felt Mr. Susman did not fully grasp the severity and impact of these racist and bigoted acts.

40. Mr. Susman warned Mr. Walton that he would send Mr. Walton home if he continued to "escalate" the situation.

41. Following these incidents, Mr. Walton notified Ms. Bartholomew that he wanted to go home for the day because the situation was making him uncomfortable.

42. With Ms. Bartholomew's permission, Mr. Walton left work early that day with approximately 2.5 hours remaining on his shift.

43. Ms. Bartholomew accompanied Mr. Walton as he exited the facility.

44. While walking together, they passed the racist vandalism, which Ms. Bartholomew observed.

45. On March 27, 2025, Mr. Walton arrived at work at approximately 4:30 a.m.

46. Mr. Glenn informed Mr. Walton not to clock in and told him that he was terminated for leaving the previous day without telling his supervisor.

47. Mr. Walton informed Mr. Glenn that he had spoken with Ms. Bartholomew before leaving work the prior day to confirm permission to leave work early.

48. Mr. Glenn stated that because Ms. Bartholomew was not Mr. Walton's supervisor and Mr. Walton had not expressly received permission from a supervisor, Defendant was terminating Mr. Walton.

49. Defendant did not identify or discipline the person responsible for the racist vandalism.

**FIRST CLAIM FOR RELIEF**
**Discrimination Based on Race in Violation of CADA**

50. Mr. Walton incorporates by reference the above paragraphs as though set forth separately herein.

51. At all times relevant to this Complaint, Mr. Walton served as an "employee" as defined by C.R.S. § 24-34-401(2).

52. At all times relevant to this Complaint, Defendant acted as an "employer" as defined by C.R.S. § 24-34-401(3).

53. CADA prohibits employers from discriminatory or unfair employment practices against employees because of the employee's race.

54. Discriminatory or unfair employment practices include discharge, demotion, and harassment during the course of employment, or discrimination in compensation, terms, conditions, or privileges of employment.

55. Mr. Walton is an African-American/Black man and is a member of a protected class pursuant to CADA.

56. Mr. Walton was qualified for his position and performed the responsibilities of his position satisfactorily.

57. Defendant subjected Mr. Walton to less favorable terms and conditions of employment when it, *inter alia*: subjected him to discriminatory treatment and comments, subjected him to a hostile work environment, failed to remedy harassment based on his race, and terminated his employment on or about March 27, 2025.

58. Defendant treated Mr. Walton less favorably than similarly situated white employees.

59. The effect of the complained-of practices in the foregoing paragraphs has been to deprive Mr. Walton of equal employment opportunities because of his race.

60. Defendant's above-described conduct was willful, wanton, and/or committed with reckless indifference to Mr. Walton's protected rights.

61. Defendant's above-described conduct constituted discrimination based on Mr. Walton's race in violation of CADA.

62. As a direct and proximate cause of Defendant's above-described discriminatory actions, Mr. Walton has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, inconvenience, and other non-pecuniary losses; and he is entitled to such non-economic damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## SECOND CLAIM FOR RELIEF
### Hostile Work Environment/Harassment Based on Race in Violation of CADA

63. Mr. Walton incorporates by reference the above paragraphs as though set forth separately herein.

64. At all times relevant to this Complaint, Mr. Walton served as an "employee" as defined by C.R.S. § 24-34-401(2).

65. At all times relevant to this Complaint, Defendant acted as an "employer" as defined by C.R.S. § 24-34-401(3).

66. CADA prohibits racially hostile work environments and harassment.

67. Mr. Walton is African-American/Black and is a member of a protected class pursuant to CADA.

68. Defendant subjected Mr. Walton to harassment and a hostile work environment and harassment based on his race when, *inter alia*: Mr. Walton's coworker, Mr. Roberts, made racist comments referring to "your" music and "you" in reference to Black people, including comments about rap music involving killing each other, selling drugs, robbing, and destroying the community; Mr. Walton's coworker, Mr. Kapfhamer, stated, "We don't have to hear your black music; we don't like black music anyways;" a swastika symbol and the racial slur "N**GERS" were carved into a bathroom door frame; Mr. Glenn made comments regarding the Klan and suggested an African-American was the likely vandal; and another swastika was carved into the bathroom paper towel dispenser.

69. The harassment Mr. Walton experienced was unwelcome, was offensive to Mr. Walton, and is objectively offensive to a reasonable individual who is also an African-American/Black man.

70. The harassment altered the terms and conditions of Mr. Walton's employment.

71. The comments and conduct to which Defendant subjected Mr. Walton unreasonably interfered with Mr. Walton's ability to perform his job in an environment free from intimidation and harassment.

72. Defendant knew of the harassment because of Mr. Walton's reports, and Defendant failed to take prompt and effective remedial action.

73. Defendant's above-described conduct constitutes harassment and created a hostile work environment based on Mr. Walton's race in violation of CADA.

74. Defendant's above-described conduct was willful, wanton, and/or committed with reckless indifference to Mr. Walton's protected rights.

75. As a direct and proximate cause of Defendant's above-described actions, Mr. Walton has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, inconvenience, and other non-pecuniary losses; and he is entitled to such non-economic damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**THIRD CLAIM FOR RELIEF**
**Retaliation in Violation of CADA**

76. Mr. Walton incorporates the above paragraphs as though set forth separately herein.

77. At all times relevant to this Complaint, Mr. Walton served as an "employee" as defined by C.R.S. § 24-34-401(2).

78. At all times relevant to this Complaint, Defendant acted as an "employer" as defined by C.R.S. § 24-34-401(3).

79. CADA makes it an unlawful employment practice for an employer to retaliate or discriminate against any individual because he has opposed unlawful employment practices or otherwise engaged in protected activity.

80. Mr. Walton engaged in protected activity when he, *inter alia:* reported racist comments to his supervisor, Mr. Susman, on or about March 18, 2025; participated in a meeting regarding harassment on or about March 26, 2025; and reported bathroom vandalism on or about March 26, 2025.

81. Defendant unlawfully retaliated against Mr. Walton when it subjected him to a retaliatory hostile work environment.

82. Defendant further retaliated against Mr. Walton when it terminated his employment on or about March 27, 2025.

83. A causal connection exists between Mr. Walton's protected activities and Defendant's unlawful retaliation.

84. Mr. Walton's termination is a consequence that would tend to discourage a reasonable employee from engaging in protected activity, including reporting discrimination and harassment.

85. Defendant's above-described conduct was willful, wanton, and/or committed with reckless indifference to Mr. Walton's protected rights.

86. As a direct and proximate result of Defendant's above-described discriminatory or unfair employment practices, Mr. Walton has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and Mr. Walton is entitled to such non-economic damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## **FOURTH CLAIM FOR RELIEF**
### **Race Discrimination in Violation of Section 1981**

87. Mr. Walton incorporates the above paragraphs as though set forth separately herein.

88. Section 1981 prohibits discrimination based on race in the making and enforcement of contracts and is designed to include a remedy against discrimination in employment on the basis of race. *See* 42 U.S.C. § 1981(a) – (b); *see also Casias v. Raytheon Co*., No. 17-CV-2635-MSK, 2019 WL 1170546, at *4 (D. Colo. Mar. 13, 2019).

89. Under Section 1981, all persons have the same right to make and enforce contracts and to enjoy the full and equal benefits of all laws.

90. Employment contracts are among those contracts protected by Section 1981.

91. Section 1981 declares:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> . . .
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *Id.*

92. On or about March 10, 2025, Defendant entered into a contract with Mr. Walton that is subject to Section 1981.

93. Mr. Walton is a member of a protected class pursuant to Section 1981 because he is African-American/Black.

94. But for Mr. Walton's race, Defendant would not have discriminated against him.

95. Defendant denied Mr. Walton "benefits, privileges, terms, [or] conditions of the contractual relationship" because of racial animus.

96. Defendant denied Mr. Walton "benefits, privileges, terms, [or] conditions of the contractual relationship" when it, including but not limited to, subjected Mr. Walton to a hostile work environment, failed to alleviate Mr. Walton from the discriminatory conduct while at work, and terminated him.

97. Defendant terminated Mr. Walton, denying him full and equal benefit of all laws based on race, ancestry, ethnicity, and/or ethnic traits, unlike similarly situated employees outside of Mr. Walton's protected class.

98. Defendant's disparate treatment of Mr. Walton was aimed at him because of his race, ancestry, ethnicity, and/or ethnic traits, resulted in adverse impacts on the terms and conditions of Mr. Walton's employment, and further subjected him to retaliation.

99. As a direct and proximate result of Defendant's above-described actions, Mr. Walton has suffered damages, including lost wages and benefits, non-economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**FIFTH CLAIM FOR RELIEF**
**Hostile Work Environment/Harassment in Violation of Section 1981**

100. Mr. Walton incorporates the above paragraphs as though set forth separately herein.

101. Section 1981 prohibits racially hostile work environments and harassment.

102. Mr. Walton is African-American/Black and is a member of a protected class pursuant to Section 1981.

103. Defendant subjected Mr. Walton to harassment and a hostile work environment and harassment based on his race when, *inter alia*: Mr. Walton's coworker, Mr. Roberts, made racist comments referring to "your" music and "you" in reference to Black people, including comments about rap music involving killing each other, selling drugs, robbing, and destroying the community; Mr. Walton's coworker, Mr. Kapfhamer, stated, "We don't have to hear your black music; we don't like black music anyways;" a swastika symbol and the racial slur "N**GERS" were carved into a bathroom door frame; Mr. Glenn made comments regarding the Klan and suggested an African-American was the likely vandal; and another swastika was carved into the bathroom paper towel dispenser.

104. The harassment Mr. Walton experienced was unwelcome, was offensive to Mr. Walton, and is objectively offensive to a reasonable individual who is also an African-American/Black man.

105. The harassment altered the terms and conditions of Mr. Walton's employment.

106. The comments and conduct to which Defendant subjected Mr. Walton unreasonably interfered with Mr. Walton's ability to perform his job in an environment free from intimidation and harassment.

107. Defendant knew of the harassment because of Mr. Walton's reports, and Defendant failed to take prompt and effective remedial action.

108. Defendant's above-described conduct constitutes harassment and created a hostile work environment based on Mr. Walton's race in violation of Section 1981.

109. Defendant's above-described conduct was willful, wanton, and/or committed with reckless indifference to Mr. Walton's protected rights.

110. As a direct and proximate cause of Defendant's above-described actions, Mr. Walton has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, inconvenience, and other non-pecuniary losses; and he is entitled to such non-economic damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**SIXTH CLAIM FOR RELIEF**
**Retaliation in Violation of Section 1981**

111. Mr. Walton incorporates the above paragraphs as though set forth separately herein.

112. Mr. Walton engaged in activity protected by Section 1981 when he reported in good faith to supervisors and Human Resources of Defendant his reasonable belief that he experienced discrimination and harassment on multiple occasions.

113. But for Mr. Walton's race and complaint of race discrimination, he would not have been retaliated against.

114. Defendant unlawfully retaliated against Mr. Walton in the terms and conditions of his employment by, including but not limited to, subjecting him to a hostile work environment, failing to alleviate Mr. Walton from discriminatory conduct while at work, and terminating him because he engaged in the above-described statutorily protected activities.

115. A causal connection exists between Mr. Walton's protected activities and Defendant's unlawful retaliation.

116. Defendant's above-described retaliatory conduct, including Defendant's termination of Mr. Walton, is the type that would be materially adverse to a reasonable employee and chill such employee's willingness to engage in protected activity, such as opposing discrimination by making internal reports of the same.

117. As a direct and proximate result of Defendant's above-described actions, Mr. Walton has suffered damages, including lost wages and benefits, non-economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Walton respectfully requests that this Court enter judgment in his favor against Defendant and order the following relief as allowed by law:

A. Economic damages;

B. Compensatory damages;

C. Punitive damages as allowed by law;

D. Attorneys' fees and costs of this action;

E. Pre-judgment and post-judgment interest at the highest lawful rate; and

F. Such further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

DATE: March 19, 2026.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS, LLP**

By: */s/ Andrew C. Quisenberry*
Andrew C. Quisenberry
Jacqueline Guesno
518 17th Street, Suite 1100
Denver, Colorado 80202
(720) 263-5415
aquisenberry@hkm.com
jguesno@hkm.com

*Attorneys for Plaintiff Wendell "Sean" Walton*